## Snyder *versus* Wilt.

1. If the court mislead the jury, by directing their attention to a point on which there was no evidence, it is error.

2. In a suit on a draft, by a holder against the acceptor, the drawer, having been released from the costs of the suit and from responsibility on the draft, is a competent witness for the acceptor, to prove facts occurring after the negotiation of the draft, tending to show that the holder was not the owner of the draft, and was making a fraudulent use of it.

3. It is a sufficient service of notice of the taking of a deposition, if given to the attorney of the party, who acquiesces in the service; particularly if the deposition was allowed to be read on a former trial of the cause, without objection.

4. Service of notice of the taking of a deposition, made by leaving a copy with the wife of the party, without saying that it was made by leaving a copy at his dwelling house, is sufficient; the presumption being, in the absence of proof to the contrary, that she was *at home*, when the notice was served.

5. When the right of a holder of a draft is disputed, on the ground of want of consideration on his part, he may give in evidence notes held by him, before the transfer of the draft, against the person for whose accommodation it was made, and from whom the holder received it.

ERROR to the Common Pleas of *Union county*.

This was an action of debt, by Charles A. Snyder against John Wilt, on a draft duly protested, as follows:—

$267.50.                          HARTLETON, December 20, 1844.

Ninety days after date, please pay to the order of C. S. Kendig, two hundred and sixty-seven dollars and fifty cents, payable at the Bank of Northumberland, and charge the same to my account, and oblige                         Your obedient servant,

WM. GLOVER.

To John Wilt, Hartleton, Union Co., Pa.

Written across the face are these words, to wit: "*Accepted, John Wilt;*" and endorsed is the name " *C. S. Kendig.*"

Protested at the Bank of Northumberland, 22d March, 1845.

Plea, payment, with leave, &c.

[Snyder *v.* Wilt.]

The case came up on bills of exception to evidence, and the court's answer to the plaintiff's points.

After the plaintiff had given in evidence the above draft, he rested.

Defendant, after offer of receipt and deposition of Robert Barber, which were rejected, gave in evidence a transcript of a judgment, on the docket of the plaintiff, in favor of Glover, against the commissioners of Dauphin county, for $29.30.

Defendant then offered a part of the deposition of *William Glover*, one of the parties to the draft, taken 25th March, 1848. Plaintiff objected on the ground of interest and public policy, and the court sustained the objection.

The defendant then called John Snyder, and offered to prove by him, *inter alia*, that the draft in suit was in the hands of the plaintiff in January or February, 1845; that he admitted he had received it from Barber for the purpose of getting it discounted, &c.; that the plaintiff admitted he had not paid Barber the full amount, and he agreed to accept a draft in favor of Chandler, which was drawn, for $100 or more; that Chandler refused to accept the draft, and retained in his possession Barber's property; that the witness and Colonel Eyre went Barber's security, and paid the money to Chandler.

This was offered to show that the note was not negotiated to Snyder in the usual course of business; that he is not a *bona fide* holder, and has not paid a valuable consideration. Plaintiff objected, and the court admitted the evidence.

The witness testified, and in course of his testimony said: I do not recollect of C. A. Snyder saying for what purpose he had received the draft on Wilt; do not know that he said any thing about that.     *     *     *     *

I do not know that Snyder said he had not paid Barber, but he urged it on Chandler that the draft would be paid, &c., &c.

Defendant again offered the deposition of *William Glover*, with a receipt of William Barber to Glover, and a release to Glover from liability for the costs of this suit, and on account of the debt. Objection made on part of plaintiff.

Court admitted a part of the deposition, and plaintiff's counsel excepted. Glover, in his deposition, testified, *inter alia*, to conversation with Snyder, in relation to the draft, in January 1845. That he said, in the conversation, that he had not cashed the draft for Barber, but that he had given some sixty-five or seventy dollars of an advancement on it, &c.     *     *     *     *

I told him that Wilt was good, and that he requested me to lift the draft and pay Snyder what he had advanced on it. He refused giving it to me, and said that he and Barber *had some old settlements; did not know how they stood, &c.*     *     *     *

On part of the plaintiff was offered the deposition of John A.

[Snyder *v.* Wilt.]

Fisher, Esq., to the effect, *inter alia*, that he was one of the counsel of Barber in a proceeding in court; that Snyder was the endorser of a promissory note, for $75, drawn by Barber in favour of Snyder, and endorsed by Snyder, and handed to the witness by Barber as a fee in the proceeding referred to ; that the note for $75 was taken up by Snyder; that *Barber* informed him that he had placed in Snyder's hands a note or draft on some person in Union county, out of which the note would be paid, &c.

The deposition was objected to on various grounds, one of which was that "no notice was served on the party of the time and place of taking the deposition."

Plaintiff called A. Swineford, Esq.—I served the notice attached to the deposition on Mr. Casey, and I think he did not object to receiving it. My impression is, I asked him whether he would accept, and he did accept of the notice, to the best of my impression.

Cross-examined.—I think it was in Mr. Casey's office, near Mr. Kleckner's. I have no other recollection than that he made no objection to receiving it. I think I would have served it on Wilt, if he had objected to receiving it. I served it on the 15th day of July, 1845. I knew I would have to serve it on Wilt, if he had objected. My impression is, I served it by copy, and that I went to Mr. Casey's office for the purpose. The deposition was admitted on the former trial, without objection.

Objection sustained, and plaintiff excepted.

On part of plaintiff was offered another deposition of John A. Fisher, Esq. It was objected to on part of defendant, because the alleged notice to Wilt, as to the taking it, was by leaving a copy with his wife. The objection was sustained, and exception on part of plaintiff.

On part of plaintiff were offered two notes or due-bills, to show that Barber was indebted to Snyder, the plaintiff, at the time he received the draft in suit; evidence being given as to the signature of Barber to the notes.

$100. HARRISBURG, November 5, 1844.

Due unto C. A. Snyder, or order, one hundred dollars, which I promise to pay unto him ten days after date. R. BARBER.

November 15, 1842.—Due C. A. Snyder, fifty dollars, value received. R. BARBER.

$50.

Objection on part of defendant sustained, and exception by plaintiff.

On the part of plaintiff were submitted two points, viz. :—

1. That there is no evidence of payment further than of the amount of the judgment on Snyder's docket, and the sum admitted in the affidavit of defence, and that the plaintiff is entitled to recover the balance of the draft.

F

[Snyder *v.* Wilt.]

*Answer.*—These are the only payments shown, and the plaintiff is entitled to recover the balance, unless there is evidence in the cause to show that Snyder obtained the note by undue means.

2. That as there is no evidence to show that the draft is an accommodation paper, the plaintiff is entitled to recover the amount from defendant, after deducting the amount of the judgment on Snyder's docket, and the sum admitted by the defendant in his affidavit of defence.

*Answer.*—We answer this point as requested, with the exception made in our answer to the first point.

December 26, 1848, verdict for defendant.

It was assigned for error :

1. The court erred in admitting the testimony of John Snyder.

2. The court erred in admitting the deposition of Wm. Glover.

3. The court erred in rejecting the two notes, or due-bills, offered by the plaintiff, dated November 5, 1844, and November 15, 1842, and signed by R. Barber.

4. The court erred in their answers to plaintiff's points.

5. The court erred in rejecting the depositions of J. A. Fisher taken on the 16th of August, 1845, and the 10th September, 1846.

The case was argued by *Slenker,* for plaintiff in error.—The testimony of Snyder did not touch the original concoction of the draft, nor show payment or release, and was not evidence.

2. Glover, being a party to the draft, was not competent to testify in the case : 3 *W. & Ser.* 557; 1 *Rawle* 196; 1 *Barr* 435, Wolf *v.* Fink. Further, his testimony had no tendency to prove what is necessary to constitute a defence to this action.

3. If the testimony of Glover was properly admitted, the two due-bills should have been admitted to rebut his testimony. The holder of an accommodation negotiable note may sell, discount, or pledge it for an antecedent debt : 3 *Barr* 381–8; 49 *Law Lib.* 47.

4. The plaintiff's points should have been answered without the qualifications annexed.

5. The notice of taking the first deposition of J. A. Fisher was legal notice : 8 *Ser. & R.* 41; 1 *Barr* 442; 1 *Pa. Rep.* 485.

*Casey,* for defendant in error.—The testimony of Snyder was competent, as it tended to prove that after the note was in Snyder's hands, he treated it as Barber's property. It went to show that he was not the owner of the note : 6 *Barr* 194–5.

2. Glover was competent : 7 *W. & Ser.* 89 ; 4 *W. & Ser.* 287; 6 *Ser. & R.* 113. A party to a negotiable instrument, *actually negotiated,* may prove subsequent matters, as payment or discharge : 3 *Barr* 381; 5 *id.* 51–3; 4 *Rawle* 307. The plaintiff's points were answered as favorably as the plaintiff had a right to expect.

[Snyder *v.* Wilt.]

The defence was, that plaintiff had procured the note by fraud and undue means.　This was a question for the jury.

The opinion of the court was delivered July 20, 1850, by

ROGERS, J.—This is an action of debt, to recover the amount of a draft for $267.50, drawn by William Glover on John Wilt, the defendant, and accepted by him, in favor of C. S. Kendig, by whom it is endorsed, payable ninety days after date, at the Northumberland Bank.　The note passed into the possession of Charles A. Snyder, the plaintiff, and, not being paid at maturity, was regularly protested.　It was in his hands at the time of protest, the commencement of the suit, and the trial, and the action is brought by him as the holder of the draft. The defendant pleads payment, with leave, &c.　By the plea, he admits the draft was drawn by Glover, accepted by Wilt, and in the hands of Snyder, as endorsee and holder.　The defendant takes defence, as I understand the case, (which, from the manner in which it was tried, comes in a most imperfect state before us,) on the ground that the draft was given for the accommodation of a certain Robert Barber, without value, who, at the time, was in difficulty, in respect to a debt of one hundred dollars, owing by him to a certain J. Chandler ; that there was no debt, as between Glover, Wilt, and Kendig, and no money consideration passing between them; that the debt of Chandler was afterward paid by John Snyder, and the object of the draft failed ; that the draft was handed to Barber for that purpose, and that he passed it to C. A. Snyder, the plaintiff, as his agent, for the purpose of making the arrangement with Chandler, which having failed, the money was afterwards paid by John Snyder, as before stated.　If these facts be proved, the defendant has a valid defence to the action, for Snyder would have no better right than Barber, who could not recover from Wilt, who accepted for his accommodation merely.　In an action by an endorsee against the drawer of a bill, evidence was received to show that though the endorsement was general, the plaintiff held the bill merely as an agent for collection, and that the payee had requested the drawer not to pay the endorser; and this was held to be a good defence : Barber *v.* Prentiss, 6 *Mass. R.* 530 ; Henrick *v.* Carman, 10 *Johns.* 224.　This is clear; but, unfortunately, the defendant failed to prove that it was accommodation paper.　For aught that appears, it was a real, bona fide business transaction between the original parties to the note given by Glover and accepted by Wilt in payment of a debt.　If this be so, it is immaterial to Wilt to whom payment is made, whether to Glover, Barber, or Snyder. A recovery by the holder will be an ample shield and protection to him, in any suit hereafter brought by any of the original parties, or by Barber.　The defendant has also failed to prove that, at the time the note was endorsed to Snyder, he knew the draft was any

[Snyder *v.* Wilt.]

other than it purported to be in its form—a commercial transaction, in the usual course of business. There, then, is nothing to prevent a recovery, even admitting Snyder to be nothing more than the agent of Barber. As the holder of the paper, he has a right of action against Wilt, the acceptor, who stands in the same position as the drawer or maker of a promissory note. The evidence returned with the record serves to show, either that Snyder paid value, and took an absolute transfer of the draft, or that it was endorsed to him (which, probably, is the better opinion,) as a collateral security for money already and afterwards to be advanced, for the purpose of arranging the debt owing by Barber to Chandler. That the last was the sole object of all the parties, is scarcely reconcilable with the fact that the draft is given for two hundred and sixty-seven dollars and fifty cents, whereas the debt of Barber only amounts to about one hundred dollars. It cannot be doubted that the holder of an accommodation negotiable note may sell, discount, or pledge it for an antecedent debt: Appleton *v.* Donaldson, 3 *Barr* 381, 388. This is a mere glance at the evidence, as returned with the record; and it must be remarked,·that there is not a particle of evidence, the shadow of the shade of suspicion that Snyder obtained possession of the note by undue means. It was passed to him, with the assent of Barber, for a fair and legitimate object, as the evidence manifestly shows; and it is in answer to points put by the plaintiff, the court instruct the jury the plaintiff was entitled to recover, unless there is evidence in the cause that he obtained the note by *undue means*. By this instruction the jury were misled, by directing their attention to a point on which there was no evidence. As no general charge is returned, perhaps none was given. This cause appears to have been tried on exceptions to evidence and points preferred to the court. For this error, if there were nothing else, the judgment must be reversed. But, as this cause goes down for another trial, there are other errors assigned, which claim attention.

We see no error in the testimony of either Snyder or Glover. Their testimony is pertinent, it cannot be doubted, to the matter of controversy. Glover, although a party to the original instrument, being released, is a competent witness; as his evidence does not go to invalidate the instrument as between them, but to matters which subsequently took place, after the making and executing the draft: Thorn *v.* Collford, ruled at Pittsburgh, but not yet reported.

We are, however, of opinion the court erred in ruling out the depositions of J. A. Fisher, and the note or due-bill of R. Barber to C. A. Snyder.

On the former trial, the first deposition of Fisher was read without objection. On the last, it was excepted to, on several grounds. The last, viz. that there was no notice served on the party of the time and place of taking the deposition, is alone deserving of any

[Snyder *v.* Wilt.]

attention. This, it must be admitted, would be a decisive objection, but for the testimony of Mr. Swineford, who deposes that he served the notice on the counsel for the defendant, and he thinks he did not object to receiving it. His impression is, he asked him whether he would accept, and, to the best of his impression, he did accept; has no recollection that he made any objection to receiving it; that he knew he would have to serve it on Wilt, if any objection was made, and that he would have so served it, if any objection had been made. To reject a deposition under such circumstances, is, to say the least of it, rather sharp practice. It was admitted, on the former trial, without objection, which confirms the statement of Mr. Swineford. Mr. Swineford had the best reason to believe the service of notice on the party was waived. Not having the rule of court before me, I cannot positively say, but I suppose it is hardly so stringent as that service of notice may not be waived. In Newlin *v.* Newlin, 8 *Ser. & R.* 41, it is held that notice of the taking of a deposition served on the attorney in the cause, is good, unless he objects at the time of service. I do not, however, put the case on that ground, as I am well aware it is ruled that the waiver of service on the party cannot be implied from the attorney's omission expressly to dissent to the service on himself: 1 *Barr* 442, Conningham *v.* Jordan. Here, there is something besides silence in the attorney. There is an acquiescence in the service, particularly connected with the fact that the deposition was allowed to be read on the former trial, without objection.

Another deposition of Fisher was rejected, because the sheriff who served the notice returns it served on Wilt by leaving a copy with his wife, without saying it was served by leaving a copy at his dwelling-house, with his wife. We think the deposition was improperly excluded, as it is no violent presumption that she was at home when it was served, unless in resorting to the absurd supposition that it was served on her when abroad. A notice to take depositions is rightly served by leaving a copy of it at the dwelling-house of the party, with his son or with his wife: Campbell *v.* Shrum, 3 *Watts* 60.

We also think the court erred in excluding the due-bills. They were pertinent evidence, proving that, previous to the transfer of the draft, Barber was indebted to Snyder. The evidence was material, bearing directly on the consideration of the transfer, and also, if viewed as a collateral security for advances, showing the sum Barber was indebted to Snyder.

Judgment reversed, and a *venire facias de novo* awarded.